UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE CARTAGENA,

    Petitioner,

v.

J. A. TERRIS,

    Respondent.

Case No. 2:15-cv-11412
Honorable Laurie J. Michelson

**OPINION AND ORDER SUMMARILY DISMISSING
PETITION FOR HABEAS CORPUS [1]**

Jose Ramos-Cartagena is serving a sentence of imprisonment at a federal correctional institution in Michigan for robbing an armored-car depot of $5.5 million dollars. He asks this Court, which sits in (the Eastern District of) Michigan, to grant him a writ of habeas corpus under 28 U.S.C. § 2241. But challenges to the legality of confinement, as opposed to the manner of confinement, should be filed pursuant to 28 U.S.C. § 2555 with the sentencing court. That would be the United States District Court for Puerto Rico. Although there is an exception to this rule where § 2555 remedies are "inadequate or ineffective," Ramos-Cartagena has not shown that to be the case. So he cannot invoke § 2241, and this Court is not the right one to decide the merits of his habeas corpus petition. The Court will thus summarily dismiss this case under 28 U.S.C. § 2243 and Rule 4 of the Rules Governing § 2254 Cases.

**I.**

**A.**

In May 1997, "[t]hree armed men dressed in security guard uniforms held up the Loomis, Fargo & Co. armored car depot in Ponce, Puerto Rico, . . . while a fourth robber stood watch

outside. The robbers took the Loomis Fargo guards captive as they returned to the company's offices in armored vehicles from runs to area banks. All told, the robbers got away with an estimated $5.5 million." *United States v. Mojica-Baez*, 229 F.3d 292, 296–97 (1st Cir. 2000).

In 1998, a jury convicted Ramos-Cartagena of several charges arising out of this armed robbery, the most relevant for present purposes being a violation of 18 U.S.C. §§ 2, 924(c). *See Mojica-Baez*, 229 F.3d at 297. Section 2 makes one who aids in the commission of a federal offense "punishable as a principal," while Section 924(c) prohibits the use of a firearm "during and in relation to any crime of violence or drug trafficking crime." *See id.* The United States District Court for Puerto Rico sentenced Ramos-Cartagena to just under 28 years of imprisonment. It appears that at least five of those were for violating 18 U.S.C. §§ 2, 924(c)(1). *See* 18 U.S.C. § 924(c)(1)(A) (providing an additional five-, seven-, or ten-year sentence for possessing, brandishing, or discharging a firearm during and in relation to any crime of violence, respectively).

The United States Court of Appeals for the First Circuit affirmed Ramos-Cartagena's convictions and sentences, *United States v. Mojica-Baez*, 229 F.3d 292 (1st Cir. 2000), and the Supreme Court denied his petition for a writ of certiorari, *Cartagena v. United States*, 532 U.S. 1066 (2001).

**B.**

Ramos-Cartagena then filed three motions or petitions with the trial court (the United States District Court for Puerto Rico).

First, in 2002, Cartagena filed a petition pursuant to 28 U.S.C. § 2255 asking the trial court to vacate his sentence. The district court summarily dismissed his motion. *See Ramos-Cartagena v. United States*, No. 3:02-cv-01842 (D. Puerto Rico Dec. 9, 2003). (The First Circuit

denied Cartagena a certificate of appealability, *Ramos-Cartagena*, No. 04-1202 (1st Cir. Dec. 17, 2004), and the Supreme Court denied cert, *Cartagena v. United States*, 544 U.S. 1067 (2005)).

Second, in 2013, Cartagena filed a motion with the trial court under 18 U.S.C. § 3582(c)(2) seeking to modify his sentence due to an amendment to the federal sentencing guidelines. The trial court denied the motion. *United States v. Cartagena*, No. 97-110-01, 2013 WL 3929818, *1–2 (D. Puerto Rico July 29, 2013).

Third, later in 2013, Cartagena filed another § 2255 petition asking the trial court to vacate his convictions on Count 2 and Count 5, the latter corresponding to his use-of-a-firearm-during-the-commission-of-a-felony conviction under § 924(c). The federal district court dismissed the petition without prejudice because Cartagena had not sought authorization from the First Circuit Court of Appeals to file a second § 2255 petition. *See United States v. Cartagena*, No. 97-110-01, 2014 WL 104952, *1–3 (D. Puerto Rico Jan. 9, 2014).[1]

## C.

Ramos-Cartagena, now detained at the federal penitentiary in Milan, Michigan, petitions this Court (which, like Milan, sits in the Eastern District of Michigan) for a writ of habeas corpus under 28 U.S.C. § 2241. The basis for his petition is the United States Supreme Court's relatively recent decision in *Rosemond v. United States*, — U.S. —, 134 S. Ct. 1240, 188 L. Ed. 2d 248 (2014). There, the Court held that when the Government charges a defendant with aiding or abetting under 18 U.S.C. § 2 for conduct that violates 18 U.S.C. § 924(c), the Government "makes its case by proving that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun

---

[1] In 2006, Cartagena asked the First Circuit Court of Appeals to allow him to file a second or successive § 2255 petition. The appellate court denied his petition. *Cartagena v. United States*, No. 06-1066 (1st Cir. Feb. 6, 2006).

during the crime's commission." 134 S. Ct. at 1243. Cartagena believes that *Rosemond* renders him innocent of his conviction under 18 U.S.C. §§ 2, 924(c). (*See* Pet. for Habeas Corpus at 5–6.)

## II.

### A.

"[C]ourts have uniformly held that claims asserted by federal prisoners that seek to challenge their convictions or imposition of their sentence shall be filed in the sentencing court under 28 U.S.C. § 2255 and that claims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241." *Charles v. Chandler*, 180 F.3d 753, 755–56 (6th Cir. 1999) (internal citations omitted); *accord Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012).

There is an exception to this rule, though:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention*.

28 U.S.C. § 2255(e) (emphasis added). Under this so-called "savings clause," Ramos-Cartagena may seek a writ of habeas corpus from this Court via § 2241 if "he can show that § 2255 provides an 'inadequate or ineffective' means for challenging the legality of his detention." *Wooten*, 677 F.3d at 306.

The Sixth Circuit Court of Appeals has construed the terms "inadequate or ineffective" in § 2555(e) to have limited scope. *See Wooten*, 677 F.3d at 307. The fact that Ramos-Cartagena has unsuccessfully petitioned the federal district court in Puerto Rico under § 2255 does not render § 2255 an inadequate or ineffective avenue for relief; nor does the First Circuit Court of

Appeals' refusal to authorize the filing of a successive § 2255 petition. *See Charles*, 180 F.3d at 756 ("[T]he § 2255 remedy is not considered inadequate or ineffective simply because § 2255 relief has already been denied, or because the petitioner is procedurally barred from pursuing relief under § 2255, or because the petitioner has been denied permission to file a second or successive motion to vacate." (internal citations omitted)). Instead, our Court of Appeals says that the savings clause applies "only where the petitioner also demonstrates 'actual innocence.'" *Wooten*, 677 F.3d at 307; *United States v. Peterman*, 249 F.3d 458, 462 (6th Cir. 2001) ("[I]f petitioners do not make a claim for actual innocence, they are not entitled to relief through § 2255's savings clause.").

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency.'" *Wooten*, 677 F.3d at 307 (quoting *Bousley v. United States*, 523 U.S. 614, 623–24 (1998))). "One way to establish factual innocence is to show an intervening change in the law that establishes the petitioner's actual innocence." *Wooten*, 677 F.3d at 307 (internal quotation marks and alterations omitted)). And Cartagena may accomplish this task "by demonstrating (1) the existence of a new interpretation of statutory law, (2) which was issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) is retroactive, and (4) applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him." *Id.* at 307–08.

**B.**

As far as this Court can tell, the Sixth Circuit Court of Appeals has not decided whether *Rosemond* has retroactive effect. *See Berry v. Capello*, 576 F. App'x 579 (6th Cir. 2014) (assuming without deciding that *Rosemond* applies retroactively).

Cartagena relies on a decision by a federal district court in Wisconsin applying *Rosemond* retroactively in the context of a 28 U.S.C. § 2555 motion, *United States v. Greene*, No. 14-C-431-08-CR-124, 2015 WL 347833, at *2 (E.D. Wis. Jan. 23, 2015), but he says nothing about what appears to be overwhelming contrary district-court authority, *Aquil v. Butler*, No. CIV.A. 6:14-230-DCR, 2015 WL 1914404, at *4 & n.7 (E.D. Ky. Apr. 27, 2015) ("[T]he consensus among district courts which have addressed this issue have determined that, because the holding was dictated by established precedent, *Rosemond* does not apply retroactively to cases on collateral review." (citing cases)).

Despite *Aquil* and the slew of cases it cites, the Sixth Circuit's decision in *Wooten v. Cauley*, 677 F.3d 303 (6th Cir. 2012), gives reason for pause. There, Jerry Lane Wooten was convicted for, among other things, "money laundering in the amount of more than two million dollars, in violation of 18 U.S.C. § 1956(a)(1)(A)(i)." *Id.* at 305. Eight years after his conviction, the Supreme Court, in *United States v. Santos*, 553 U.S. 507 (2008), "issued a new interpretation of the term 'proceeds' as 'profits' in 18 U.S.C. § 1956 and overruled Sixth Circuit precedent defining 'proceeds' as 'gross receipts.'" *Wooten*, 677 F.3d at 308. Wooten thus sought a writ of habeas corpus and, like Ramos-Cartagena, filed pursuant to 28 U.S.C. § 2241. *Id.* at 305. In deciding whether *Santos* was retroactively applicable such that Wooten could invoke § 2555's savings clause, the Sixth Circuit explained that, while a new decision generally does not apply retroactively, it does so where the "decision provides a criminal rule of procedure that is of 'watershed' importance or is a substantive change in the law that imposes a new burden on the states or federal government." *Wooten*, 677 F.3d at 308 (citing *Teague v. Lane*, 489 U.S. 288 (1989)). While acknowledging that the majority of district courts had found that *Santos* was not retroactive, the Sixth Circuit sided with "several circuit courts" that had found *Santos* to be

6

"retroactively applicable because the new interpretation of the definition of 'proceeds' in § 1956 [was] a substantive change in the law and place[d] the burden on the prosecution to prove the use of profits, not mere gross receipts, in money laundering cases." *Id.* at 308.

In at least some federal circuits, *Rosemond*'s effect on 18 U.S.C. §§ 2, 924(c) is similar to *Santos*' effect on 18 U.S.C. § 1956. Prior to *Rosemond*, some Courts of Appeal had found that "a defendant aids and abets a § 924(c) offense only if he intentionally takes some action to facilitate or encourage his cohort's use of the firearm" whereas others (the Tenth Circuit at least) had used "a different standard," "requiring that the defendant actively participated in the underlying crime and knew his confederate was carrying [a] firearm." *Rosemond*, 134 S.Ct. at 1244 (internal quotation marks and citations omitted). The Supreme Court granted certiorari to mend the circuit split and held that a defendant aids or abets a § 924(c) offense if "the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Id.* at 1243, 1249–50. In so doing, the Supreme Court arguably provided a "new interpretation" of the knowledge requirement for aiding and abetting a § 924(c) offense which, at least in the Tenth Circuit, "impose[d] a new burden on the . . . federal government." *See Wooten*, 677 F.3d at 308.

Ultimately, however, the Court need not and does not answer the retroactivity question. A narrower ground for decision presents itself.

## C.

Ramos-Cartagena's § 2241 petition, even when its factual allegations are accepted as true, does not show that "more likely than not . . . no reasonable juror would have convicted him," *Wooten*, 677 F.3d at 308, of violating 18 U.S.C. §§ 2, 924(c).

7

Ramos-Cartagena argues that prior to *Rosemond*, federal courts in the First Circuit permitted the Government to prove constructive knowledge, i.e., a defendant in a federal district court in the First Circuit could be convicted under 18 U.S.C. §§ 2, 924(c) if he did not—but should have—known that a gun would be used in a § 924(c) offense. (Pet. at 3.) He claims that *Rosemond* abrogated this constructive-knowledge standard, requiring that the Government now prove actual knowledge. (*Id.*) Apparently, Ramos-Cartagena believes that given the evidence adduced at trial, more likely than not, every reasonable juror would have harbored a reasonable doubt that he had actual knowledge that a firearm would be used during the robbery of the armored car. (*See id.*)

The Court disagrees. As an initial matter, it is far from clear that *Rosemond* even prohibits the Government from proving an 18 U.S.C. §§ 2, 924(c) violation by proving constructive knowledge. The focus of the *Rosemond* opinion was the timing of the defendant's knowledge—not the type of knowledge (constructive or actual). *See Rosemond*, 134 S. Ct. at 1249–50 ("[A]n unarmed accomplice cannot aid and abet a § 924(c) violation unless he has foreknowledge that his confederate will commit the offense with a firearm. . . . [W]e think that means knowledge at a time the accomplice can do something with it—most notably, opt to walk away." (internal quotation marks omitted)). Indeed, the Supreme Court vacated the judgment because the jury instructions at Rosemond's trial could have been understood as permitting a conviction even if Rosemond had learned that a firearm would be used to commit a § 924(c) offense at a time when it was too late for him to withdraw. *See* 134 S.Ct. at 1252 ("[The district court's jury instructions] failed to convey that Rosemond had to have advance knowledge, of the kind we have described, that a confederate would be armed.").

8

More importantly, even assuming in Ramos-Cartagena's favor that *Rosemond* requires the Government to prove actual knowledge, his petition does not show that it is likely (let alone more likely than not) that every reasonable juror would harbor reasonable doubt as to his knowledge about the use of a firearm in the commission of a § 924(c) offense. True, at the time of Ramos-Cartagena's trial, the First Circuit allowed the Government to succeed under something less than an actual-knowledge standard. But—and this is key—only marginally less: "To prove that a defendant aided and abetted a violation of section 924(c), the government must establish that the defendant knew to a practical certainty that the principal would be using a gun." *United States v. Spinney*, 65 F.3d 231, 238 (1st Cir. 1995) (internal quotation marks, alterations omitted); *see also id.* ("[W]e believe that 'practical certainty' is a rubric that calls for proof verging on actual knowledge."). Given the razor thin line between "practical certainty" and "actual knowledge," and given that *all* of Ramos-Cartagena's jurors found beyond a reasonable doubt that he "knew to a practical certainty that the principal would be using a gun," it is highly doubtful that *no* reasonable juror would find that he had actual knowledge that the principal would be using a gun. At a minimum, Ramos-Cartagena's petition does not show that the contrary result is more likely than not, and so he has not carried his burden of showing actual innocence.[2]

---

[2] Additionally, although presented in the light most favorable to the Government, the summary of facts provided by the First Circuit Court of Appeals in affirming Ramos-Cartagena's convictions all but compels the conclusion that Ramos-Cartagena had actual knowledge of the use of a firearm. *See United States v. Mojica-Baez*, 229 F.3d 292, 298–99 (1st Cir. 2000) ("The searches of the defendants' homes produced a wealth of other incriminating evidence, including: . . . a photograph of Ramos–Cartagena holding an AK–47, AK–47 ammunition, police uniforms similar to Loomis Fargo uniforms, two ski masks, four boxes of two-way radios, some welding equipment, and wrappers from Banco Popular and Banco Santander at Ramos–Cartagena's house.").

### III.

In sum, 28 U.S.C. § 2241 is the proper vehicle, and this Court the proper forum, for a writ of habeas corpus only if § 2255 is "inadequate or ineffective" for Ramos-Cartagena to test the legality of his detention. And that is only the case if Ramos-Cartagena can demonstrate actual innocence. Even assuming that *Rosemond* applies retroactively, Ramos-Cartagena has not shown that it is "more likely than not that no reasonable juror would have convicted him" of violating 18 U.S.C. §§ 2, 924(c). So this case will be DISMISSED WITHOUT PREJUDICE as improperly filed. A certificate of appealability is not needed to appeal this dismissal to the Sixth Circuit. *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004). A separate judgment will follow.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: July 31, 2015

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 31, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson